UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
**Terre Haute Division**

| | |
|---|---|
| CHELSEA E. HAMERSLEY,<br>     *Plaintiff*, | )<br>)<br>) |
| v. | ) **Case No.**   2:18-cv-357<br>) |
| EQUIFAX INFORMATION SERVICES, LLC,<br>and QUICKEN LOANS INC.<br>     *Defendants*. | )<br>)<br>)<br>) |

<u>**COMPLAINT WITH JURY TRIAL DEMAND**</u>

1. The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. Congress enacted the Fair Credit Reporting Act, 15 U.S.C.A. § 1681 (West) *et seq.* ("FCRA"), to insure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers. The FCRA also imposes duties on the sources (called "furnishers") that provide credit information to credit reporting agencies.

2. This action is based on Defendants' false reporting on Plaintiff's credit reports and failures to follow reasonable procedures and failures to conduct reasonable reinvestigations with respect to such information.

3. This case also arises from Trans Union, LLC.'s widespread, pattern and practice of

disregarding its duties under the FCRA, including but not limited to the following: willfully disregarding its statutorily mandated duty to appropriately reinvestigate information disputed by consumers; willfully disregarding its statutorily mandated duty to notify furnishers of disputed information of consumers' disputes; willfully improperly deleting disputed tradeline information; and willfully disregarding its statutorily mandated duty to provide consumers with prompt notice of the deletion of disputed tradeline information by telephone.

### Factual Allegations Regarding The CDIA, Metro 2, And Credit Risk Scoring.

4. The reporting of consumer credit information, by credit reporting agencies ("CRAs") and data furnishers, is the foundation of credit risk scoring and impacts the financial lives of consumers in innumerable ways, including the availability and cost of credit, housing opportunities, leasing prospects, insurance availability and cost, utility service, and even employment. Between two and three million consumer reports are issued by credit bureaus each day. See, *http://www.cdiaonline.org/about.cfm.*

5. The Consumer Data Industry Association ("CDIA") is an international trade association, representing over 140 members involved in credit reporting, mortgage reporting, check verification, tenant and employment screening, collection services, and fraud verification services, and the CDIA is active in both federal and state legislative affairs, public relations, education, and the promulgation of industry standards.

6. Because consumer credit reporting information is such sensitive data that has far reaching implications for most, if not all, consumers, the CDIA works together with CRAs to develop, maintain and enhance industry-standard reporting formats and guidelines.

7. In cooperation with Trans Union LLC, Equifax Information Services, LLC, Experian Information Solutions, Inc., and Innovis Data Solutions, Inc., the CDIA publishes the

Metro 2 ("Metro 2") reporting standards to assist data furnishers with their compliance requirements under the FCRA. CDIA's reporting products are used in more than nine billion transactions each year. See, *http://www.cdiaonline.org/about/index.cfm?unItemNumber=515.*

8. The uniform adoption and implementation of the Metro 2 standards is the primary vehicle by which CRAs and data furnishers ensure that they are in compliance with their duties to ensure that they maintain complete and accurate information under the FCRA.

9. The Metro 2 standards provide uniformity in the reporting and interpretation of credit data, including credit risk scoring.

10. The major national CRAs – Trans Union LLC, Equifax Information Services, LLC, and Experian Information Solutions, Inc., – also collaborated and developed a browser-based software system that allows the CRAs to electronically notify furnishers easily and quickly of disputed credit reporting information, and for furnishers to easily and quickly respond to such disputes following investigation. The system is commonly referred to as e-OSCAR and was designed to be Metro 2 compliant. See, *http://www.e-oscar.org/.*

11. The e-OSCAR system primarily supports Automated Credit Dispute Verification ("ACDV") and Automated Universal Dataform ("AUD") processing, as well as other various related data reporting processes.

12. ACDVs are notifications initiated by a CRA, and transmitted to a furnisher, in response to a consumer dispute, and are the primary method the CRAs use to fulfill their statutory obligation to notify furnishers of disputed information of consumers' disputes.

13. Equifax has actual knowledge that entities reviewing consumer reports prepared by them reasonably presume they have complied with CDIA guidelines and Metro 2 standards in compiling and reporting the data therein.

14. One such entity that regularly reviews consumer reports, and uses the data contained therein, is the Fair Isaac Corporation. The Fair Isaac Corporation credit risk scoring system, commonly referred to as FICO, is the leading credit risk scoring system, and utilizes data reported by credit reporting agencies and furnishers which are, ostensibly, in compliance with Metro 2 standards.

15. The cost of credit (e.g., interest rates, fees, etc.), the availability of credit, and even unsolicited credit offers, such as the opportunity to refinance a mortgage at a lower interest rate, extended financing periods and lower rate auto loans, and even zero-percent financing credit offers for in-store credit lines, are all, by and large, driven by a consumer's FICO score.

16. Inaccurate or incorrect credit reporting often results in a lower FICO score, and thus higher costs of credit, diminished opportunity, and less purchasing power for consumers.

17. The improper reporting of a mortgage tradeline has a particularly adverse effect on a consumer's FICO score if it involves the absence or removal of positive payment history associated with that mortgage (35% of a consumer's FICO score) or it alters the age/length of credit history (15% of a consumer's FICO score).

## Jurisdiction and Venue

18. Because this case arises under the Fair Credit Reporting Act, 15 U.S.C.A. § 1681 *et seq.*, jurisdiction of this Court arises under 28 U.S.C.A. § 1331 (West).

19. Venue is proper in this Court because a substantial part of the claim arose in Indiana, Hamersley resides in Indiana, and all Defendants "reside" in Indiana, as that term is used in 28 U.S.C.A. § 1391 (West).

## Parties

20. Plaintiff, Chelsea E. Hamersley (hereinafter "Hamersley"), is a natural person who resides in Pimento, Indiana.

21. Hamersley is an individual and is therefore a "consumer" as that term is defined by 15 U.S.C.A. § 1681a(c) (West).

22. Defendant Equifax Information Services, LLC (hereinafter "Equifax") is a credit bureau that conducts business in Indiana.

23. Equifax regularly assemble and/or evaluate consumer credit information for the purpose of furnishing consumer reports to third parties, and use interstate commerce to prepare and/or furnish the reports, and accordingly, are each considered a "consumer reporting agency" as that term is defined by 15 U.S.C.A. § 1681a(f).

24. Quicken Loans Inc. (hereinafter "Quicken") regularly and in the ordinary course of business furnished information to one or more consumer reporting agencies about Hamersley's transactions and is therefore a "furnisher" as that term is used in 15 U.S.C.A. § 1681s-2 (West).

### Factual Allegations Regarding Hamersley's Bankruptcy Proceedings.

25. On or about July 6, 2012, Hamersley filed a Chapter 13 bankruptcy proceeding in the Southern District of Indiana, under Cause No. 12-8094-RLM-13.

26. Quicken was listed on her Schedule D, showing a claim in the amount of $132,145.00. A copy of Schedule D is attached as "Exhibit A."

27. On November 21, 2012, Hamersley filed her Chapter 13 Plan in accordance with 11 U.S.C. §1322(b)(5), providing for the cure of any then-deficiency and the direct payment of all future mortgage payments directly to Quicken.

28. On or about February 29, 2016, the real estate securing the aforementioned

obligation was sold. A copy of the Report of Sale is attached hereto as "Exhibit B."

29. Hamersley continued making timely payments on the obligation up to the sale.

30. Hamersley met all requirements of her Chapter 13 bankruptcy and as a result, she received a discharge by Order dated January 12, 2017.

31. Because the home was sold, and all amounts owed to Quicken paid in full, Hamersley's mortgage obligation to Quicken was not included in the aforementioned discharge.

### Inaccurate and Materially Misleading Information Reported by Equifax.

32. Sometime in March of 2017, Hamersley obtained a copy of her consumer credit report as published by Equifax.

33. The report contained erroneous information as provided by Quicken, published and reported by Equifax. Specifically, the Equifax credit report reflected that the debt previously owed to Quicken, on account number 867330582***, was discharged despite the home securing the obligation being sold months earlier and to pay the debt in full. In addition, the report failed to reflect the numerous timely payments made by Hamersley to Quicken after she filed for bankruptcy but before the home was sold and erroneously reflects a "Date of Last Payment" as "07/2012."

34. Equifax's reporting was also inaccurate, incomplete, and misleading because it does not comply with the CDIA's Metro 2 reporting standards, as discussed above.

35. While not dispositive, Courts rely on such guidance to determine furnisher liability. *See e.g.* In re Helmes, 336 B.R. 105, 107 (Bankr. E.D. Va. 2005) (finding that "industry standards require that a debt discharged in bankruptcy be reported to a credit reporting agency with the notation 'Discharged in bankruptcy" and with zero balance due") *see also* Nissou-Rabban v. Capital One Bank (USA), N.A., 285 F. Supp. 3d 1136 (S.D. Cal., Jan. 23, 2018)

36. Failure to adhere to the Metro 2 format, and/or the failure to follow the

guidance of regulatory and industry sources, such as the CDIA, is evidence of willfulness of an FCRA violation under 15 U.S.C. § 1681n(a). *See* Gillespie v. Equifax Info. Servs., LLC., No. 05C138, 2008 WL 4316950 (N.D. Ill. Sept. 15, 2008).

37. In a letter dated April 28, 2017, Hamersley disputed the information described above directly to Equifax and advised Equifax of the specific facts that rendered the reporting inaccurate and misleading. A copy of Hamersley's dispute letter is attached hereto as "Exhibit C."

38. Pursuant to 15 U.S.C. § 1681i, Equifax had a duty to notify Quicken of Plaintiff's dispute within five business days of receiving Plaintiff's dispute, to forward all relevant information and any documents included with Plaintiff's dispute for Quicken to review, to conduct a reasonable reinvestigation of the disputed information, and to thereafter correct the tradeline or delete it from Plaintiff's consumer file.

39. Upon information and belief, Equifax timely notified Quicken of Hamersley's dispute in accordance with 15 U.S.C.A. § 1681i (West).

40. In the alternative, Equifax failed to notify Quicken of Hamersley's dispute at all in violation of 15 U.S.C.A. § 1681i.

41. In response, within a document dated July 4, 2017, Equifax advised Hamersley that it had researched her dispute and the current status was being reported correctly. However, Equifax provided a copy of the tradeline as reported that reproduced at least some of the errors identified by Hamersley in her original dispute letter. Specifically, the tradeline still suggested the debt formerly owed to Quick was discharged, failed to provide any indication that the debt has been paid in full, and failed to address erroneous 'Date of Last Payment." A copy of the Equifax reinvestigation report is attached as "Exhibit D."

42. Hamersley provided all necessary information with her dispute letter to Equifax, does have a current Equifax file, and has actively used credit in the past ten years.

43. Equifax was required to communicate the specifics of Hamersley's dispute to Quicken. Likewise, Quicken had a duty to investigate the dispute and accurately report their findings to Equifax.

44. Equifax had an affirmative duty to reasonably reinvestigate the dispute submitted by Hamersley and to accurately report the tradeline information notwithstanding the information it received from Quicken.

### TRIAL BY JURY

45. Hamersley is entitled to and hereby requests a trial by jury.

### CAUSES OF ACTION

### COUNTS I & II: VIOLATION OF THE FCRA (EQUIFAX)
[15 U.S.C.A. § 1681e(b) and 1681i (West)]

46. Hamersley incorporates by reference all preceding paragraphs as though fully stated herein.

47. Equifax negligently, or in the alternative willfully, violated 15 U.S.C.A. §1681e(b) by failing to follow reasonable procedures to assure the maximum possible accuracy of Hamersley's consumer reports.

48. Equifax also negligently, or in the alternative willfully, violated 15 U.S.C.A. § 1681i in multiple ways including without limitation by failing to conduct a reasonable reinvestigation of Hamersley's dispute and by failing to appropriately delete or modify inaccurate information in Hamersley's file. *See* Zahran v. Bank of Am., 2015 WL 4397779 (N.D. Ill. July 17, 2015)

49. As a result of Equifax's violation of 15 U.S.C.A. § 1681e(b) and 15 U.S.C.A.

§1681i Hamersley has suffered actual damage including but not limited to emotional distress, the unjust suppression of her FICO credit score, the resulting payment of increased costs of credit and insurance, loss of time, loss of credit opportunity, informational injury, and a material risk of future financial harm. Therefore, Hamersley is entitled to recover actual and statutory damages pursuant to 15 U.S.C.A. § 1681n and 1681o (West).

50. Hamersley is entitled to recover costs and attorney's fees from Equifax pursuant to 15 U.S.C.A. § 1681n and 1681o.

## COUNT III: VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
[15 U.S.C.A. § 1681s-2(b)]

51. Hamersley incorporates by reference all preceding paragraphs as though fully stated herein.

52. Quicken willfully and/or negligently violated 15 U.S.C.A. § 1681s-2(b) by failing to conduct reasonable investigations upon receiving notice of Hamersley's dispute from one or more consumer reporting agencies, and/or by failing to review all relevant information provided by the consumer reporting agencies, and/or by failing to appropriately report the results of its investigations, and/or by failing to appropriately modify, delete, and/or block the inaccurate information.

53. As a result of Quicken's violations of 15 U.S.C.A. § 1681s-2(b), Hamersley has suffered actual damage including but not limited to emotional distress, the unjust suppression of her FICO credit score, the payment of increased costs of credit and insurance, loss of time, loss of credit opportunity, informational injury, and a certain material risk of future financial harm (and continues to pose a material risk of future harm stemming from the decreased perception of Plaintiff's credit worthiness). Therefore, Hamersley is entitled to recover actual damages under 15 U.S.C.A. § 1681n and 1681o.

54. In the alternative, Quicken's actions and omissions were willful, and Hamersley suffered concrete injury as set forth above, rendering it liable for punitive damages and/or statutory damages pursuant to 15 U.S.C.A. § 1681n.

55. Hamersley is entitled to recover costs and attorney's fees from Quicken pursuant to 15 U.S.C.A. § 1681n and 1681o.

**WHEREFORE**, Hamersley respectfully requests the following relief:

a. Actual damages;

b. Statutory damages;

c. Punitive damages pursuant to 15 U.S.C.A. § 1681n;

d. Reasonable attorney's fees and costs pursuant to 15 U.S.C.A. § 1681n and/or 1681o;

e. That an Order be issued for the Defendants to modify, delete or block the inaccurate information being reported; and

f. Such other and further relief as may be just and proper.

Respectfully submitted,

*/s/ Travis W. Cohron*
Travis W. Cohron, No. 29562-30
**BARKER HANCOCK & COHRON**
198 South Ninth Street
Noblesville, IN 46060
Telephone: (317) 219-4746
tcohron@bhclegal.com
***Attorney for Plaintiff***